RUTAN & TUCKER, LLP
Brian C. Sinclair (State Bar No. 180145)
bsinclair@rutan.com
Michael J. Rossiter (State Bar No. 258410)
mrossiter@rutan.com
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
DSW SHOE WAREHOUSE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELINA MARQUEZ, an individual, on behalf of herself and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DSW SHOE WAREHOUSE, INC., a Missouri corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. To be assigned<br>State Case No. C20-01948<br><br>**DEFENDANT DSW SHOE WAREHOUSE, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332 & 1453** |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF ANGELINA MARQUEZ AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant DSW Shoe Warehouse, Inc. ("DSW") hereby removes the above-captioned action from the Superior Court of the State of California, for the County of Contra Costa, to the United States District

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-1-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

Court for the Northern District of California. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2) and 1453, and is one that may be removed to this Court by DSW pursuant to 28 U.S.C. §§ 1441(a) and 1446, on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act of 2005, for the reasons stated more fully below.

## I. PROCEDURAL HISTORY

1. On September 24, 2020, plaintiff Angelina Marquez ("Plaintiff") filed a civil action against DSW in the Superior Court of the State of California in the County of Contra Costa ("Superior Court"), entitled *ANGELINA MARQUEZ, an individual, on behalf of herself and on behalf of other persons similarly situated, Plaintiff, v. DSW SHOE WAREHOUSE, INC., a Missouri corporation; and DOES 1 through 50, inclusive, Defendants*, Case No. C20-01948 (the "State Court Action"). A true and correct copy of the Complaint is attached to this Notice of Removal as "**Exhibit A**" (the "Complaint").

2. On September 24, 2020, Plaintiff also filed a Civil Case Cover Sheet. A true and correct copy of the Civil Case Cover Sheet is attached to this Notice of Removal as "**Exhibit B**."

3. On September 24, 2020, the Superior Court issued a Summons to personally serve the Complaint. A true and correct copy of the Summons is attached to this Notice of Removal as "**Exhibit C**."

4. On September 24, 2020, the Superior Court also issued a Notice Of Assignment to Department Thirty-Nine For Case Management Determination (the "Notice of Case Assignment"). By way of said notice, the State Court Action was assigned for all purposes to the Honorable Edward G. Weil, and a Case Management Conference was set for January 6, 2021 at 8:30 a.m. A true and correct copy of the Notice of Case Assignment is attached to this Notice of Removal as "**Exhibit D**."

5. To the best of DSW's knowledge, no other process, pleadings, or orders have been served upon DSW related to the State Court Action.

## II. REMOVAL IS PROPER PURSUANT TO THE CLASS ACTION FAIRNESS ACT

### A. Statutory Basis for Removal

6. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). As set forth below, this action is properly removable, pursuant to 28 U.S.C. § 1441(a), because this action is styled as a class action, in which (1) at least one class member is a citizen of a state different from that of any defendant, (2) there are over 100 putative class members, and (3) the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest or costs. See 28 U.S.C. § 1332(d)(2), (d)(5)(B), (d)(6). Therefore, CAFA authorizes the removal of this action pursuant to 28 U.S.C. §1446.

### B. Plaintiff's Complaint Alleges A Purported Class Action Under State Law.

7. Plaintiff has styled this action as a class action complaint. (Ex. A, p. 1 and ¶ 2.) Her Complaint alleges ten purported causes of action, of which the first nine are brought on behalf of the purported class. The ten causes of action are as follows: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages Due to Discharged and Quitting Employees; (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate Itemized Wage Statements; (8) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (9) Unfair and Unlawful Business Practices; and (10) Violation of California Labor Code § 2698, *et seq.* (California Labor Code Private Attorneys General Act of 2004).

8. The Complaint seeks to certify a class of "all current and former non-exempt employees of DEFENDANTS with the title of 'Store Manager' or 'Assistant Manager' in the State of California at any time within the period beginning four (4)

years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment." (Ex. A, ¶ 5.)

### C. Diverse Citizenship of the Parties

9. CAFA requires only minimal diversity to establish federal court jurisdiction – as long as "any member of a class of plaintiffs is a citizen of a State different from any defendant" the diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A). In this case, Plaintiff is a citizen of a state – California – that is different from the state of citizenship of DSW (Missouri and Ohio).

#### i. *Plaintiff's Citizenship*

10. Plaintiff's Complaint specifically alleges that she "is a citizen and resident of the State of California." (Ex. A, ¶ 2.)

#### ii. *DSW's Citizenship*

11. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where its "officers direct, control, and coordinate the corporation's activities." *Id.*

12. DSW is incorporated in the State of Missouri.

13. DSW's principal place of business is in Ohio under the "nerve center" test because DSW's headquarters are located in Ohio and nearly all of the executive and administrative functions are carried out from its Ohio headquarters.

14. Accordingly, DSW is a citizen of Missouri and a citizen of Ohio under 28 U.S.C. § 1332(c)(1). DSW is not currently a citizen of California and was not a citizen of California at the time that Plaintiff filed the Complaint.

/ / /

/ / /

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-4-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

          iii.        *Citizenship of Doe Defendants Is Irrelevant*.

15. Defendants Does 1 through 50 are fictitious. The Complaint does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to Section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

### D. There Are More Than 100 Putative Class Members.

16. The number of putative class members that Plaintiff seeks to represent is well over 100.

17. As of the time of the removal, the total number of current and former employees who fall within the putative class alleged in the Complaint is approximately 310.

### E. The Amount In Controversy Exceeds $5,000,000.

18. In order to determine the amount in controversy for purposes of removal under CAFA, "the claims of the individual class members **shall be aggregated** to determine whether the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6) (emphasis added). Without conceding liability, appropriateness of class treatment, appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claims for relief, it is clear that the amount in controversy based on the allegations in Plaintiff's Complaint is well in excess of $5,000,000.

19. A notice of removal only needs to contain "plausible allegations of the jurisdictional elements," including the amount in controversy. *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). "In assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Id.* at 925 (quoting *Ibarra v. Mannheim Investments, Inc.*, 775 F.3d

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-5-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

1193, 1199 (9th Cir. 2015).) "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them'." *Id.* at 927 (quoting *Ibarra*, 775 F.3d at 1199).

20. As noted above, Plaintiff asserts 10 causes of action on behalf of the purported class. By considering only six of Plaintiff's causes of action, it is clear that the amount in controversy in this class action, in the aggregate, exceeds $5,000,000.00.

i. <u>Plaintiff's Proposed Class</u>

21. Plaintiff's putative class consists of approximately 310 individuals.

22. The employees worked approximately 29,000 workweeks during the putative class period.

23. The average hourly rate of the employees was approximately $27.40.

ii. <u>Plaintiff's Meal Period Claim</u>

24. Plaintiff's first cause of action alleges that "DEFENDANTS required, suffered or permitted PLAINTIFF and CLASS MEMBERS to take less than the 30-minute meal period, or to work through them, and have failed to otherwise provide the required meal periods to PLAINTIFF and CLASS MEMBERS pursuant to Labor Code §§ 226.7 and 512 and IWC Order No. 7-200 1, § 11." (Ex. A, ¶ 15.) Plaintiff further alleges that Defendant "fail[ed] to compensate PLAINTIFF and CLASS MEMBERS who were not provided with a meal period ... one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." (*Id.*, ¶ 16.) Moreover, Plaintiff alleges that Defendant "fail[ed] to compensate PLAINTIFF and CLASS MEMBERS for all hours worked during their meal periods." (*Id.*, ¶ 17.)

25. While Plaintiff does not specifically allege how frequently such alleged meal period violations occurred, Plaintiff alleges that DSW adopted "policies and practices of not paying PLAINTIFF and other CLASS MEMBERS all wages earned and due, through methods and schemes which include, but are not limited to, failing

to . . . provide rest and meal periods . . . . in violation of the California Labor Code and the applicable Welfare Commission ('IWC') Orders." (Ex. A, ¶ 9.) This allegation is reasonably construed as claiming that class members *never* received legally-compliant meal periods.

26. Although the allegations in the Complaint can be interpreted as alleging that putative class members were denied legally compliant meal periods each workday, DSW conservatively estimates based on the allegations in the Complaint that Plaintiff and putative class members were denied, on average, only two meal periods each workweek. Using this estimate, the amount in controversy on the meal period claim would be $1,589,200, broken down as follows: 29,000 workweeks x average hourly rate of $27.40 x 2 missed meal periods per week = **$1,589,200**.

      iii.     *Plaintiff's Rest Break Claim*

27. Plaintiff's second cause of action alleges that Defendant "failed to provide rest periods." (Ex. A, ¶ 20.) Plaintiff also alleges that Defendant "fail[ed] to pay PLAINTIFF and CLASS MEMBERS who were not provided with a rest period . . . one additional hour of compensation at each employee's regular rate of pay for each workday that a rest period was not provided. (*Id.*, ¶ 21.)

28. While Plaintiff does not specifically allege how frequently such alleged rest break violations occurred, Plaintiff alleges that DSW adopted "policies and practices of not paying PLAINTIFF and other CLASS MEMBERS all wages earned and due, through methods and schemes which include, but are not limited to, failing to . . . provide rest and meal periods . . . . in violation of the California Labor Code and the applicable Welfare Commission ('IWC') Orders." (Ex. A, ¶ 9.) This allegation is reasonably construed as claiming that class members *never* received legally-compliant rest breaks.

29. Although the allegations in the Complaint can be interpreted as alleging that putative class members missed rest breaks each workday, DSW conservatively estimates that Plaintiff and putative class members were denied, on average, only

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-7-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

rest breaks on two workdays each week. Using this estimate, the amount in controversy on the rest break claim alone would be $1,589,200, broken down as follows: 29,000 workweeks x average hourly rate of $27.40 x 2 missed rest breaks per week = **$1,589,200**.

      iv. *Plaintiff's Overtime Claim*

  30. Plaintiff's third cause of action alleges that Defendant "failed to compensate PLAINTIFF and CLASS MEMBERS for all overtime hours worked [by] [1] failing to pay overtime at one and one-half or double the regular rate of pay . . . .; [2] requiring, suffering or permitting PLAINTIFF and CLASS MEMBERS to work off the clock; [3] requiring, permitting, or suffering PLAINTIFF and CLASS MEMBERS to work through meal breaks; [4] illegally and inaccurately recording time in which PLAINTIFF and CLASS MEMBERS worked . . . ." (Ex. A, ¶ 25.)

  31. Plaintiff does not allege how many minutes per day class members were required to work off the clock. She does, however, allege that DSW adopted "policies and practices of not paying PLAINTIFF and other CLASS MEMBERS all wages earned and due, through methods and schemes which include, but are not limited to, failing to pay overtime premiums . . . in violation of the California Labor Code and the applicable Welfare Commission ('IWC') Orders." (Ex. A, ¶ 9.)

  32. Based on the allegations in the Complaint, DSW conservatively estimates that putative class members spent only 10 minutes per day working off-the-clock overtime, working during meal periods for which they would have been paid overtime if the time was recorded, or that DSW inaccurately recorded time worked that would have been overtime. Using this estimate, the amount in controversy on the overtime claim would be $989,277, broken down as follows: 29,000 workweeks x 5 shifts per week x 10 minutes (or 0.166) per shift x $41.10 average overtime wage rate during class period.

  33. Thus, even under conservative estimates, assuming Plaintiff's

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-8-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

allegations are true, the amount in controversy for the overtime wage claim, by itself, is at least **$989,277**.

   v.   *Plaintiff's Minimum Wage Claim*

34.   Plaintiff's fourth cause of action alleges that Defendant "failed to pay PLAINTIFF and CLASS MEMBERS the applicable minimum wages for all hours worked [by] [1] requiring, suffering or permitting PLAINTIFF and CLASS MEMBERS to work off the clock ... [2] illegally and inaccurately recording time in which PLAINTIFF and CLASS MEMBERS worked . . . . " (Ex. A, ¶ 30.)

35.   Plaintiff does not allege how many minutes per day class members were required to work off the clock and did not receive the minimum wage. She does, however, allege that DSW adopted "policies and practices of not paying PLAINTIFF and other CLASS MEMBERS all wages earned and due . . . in violation of the California Labor Code and the applicable Welfare Commission ('IWC') Orders." (Ex. A, ¶ 9.)

36.   Based on the allegations in the Complaint, DSW conservatively estimates that the putative class members, on average, spent only 10 minutes per day working off-the-clock and not receiving the minimum wage. Using this estimate, the amount in controversy on the minimum wage claim is $264,770, plus liquidated damages, broken down as follows: 29,000 workweeks x 5 shifts per week x 10 minutes (or 0.166) per shift x $11 average minimum wage rate during class period. In addition, liquidated damages under Labor Code § 1194.2(a), which is an amount equal to the unpaid wages, would double the amount of alleged unpaid minimum wage.

37.   Thus, even under conservative estimates, assuming Plaintiff's allegations are true, the minimum wage claim, by itself, is **$529,540** in unpaid minimum wages and liquidated damages.

   vi.   *Plaintiff's Waiting Time Penalty Claim*

38.   Plaintiff's fifth cause of action alleges that Defendant "willfully failed

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-9-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202." (Ex. A, ¶ 36.) Plaintiff further alleges that "California Labor Code § 203 provides that if an employer willfully fails to pay, in accordance with California Labor Code §§ 201 and 202; any wages of an employee who is discharged or who quits, the employer is liable for waiting time penalties in the form of continued compensation to the employee at the same rate for up to 30 workdays." (*Id.*, ¶ 35.)

39. During the three years prior to the filing of the Complaint,[1] approximately 185 putative class members ended their employment with DSW.

40. Based on Plaintiff's allegations, the waiting time penalty claim places **$1,216,560** in controversy for those employees, broken down as follows: 185 employees x 30 days x 8 hours x $27.40 average hourly rate = **$1,216,560**.

   vii. *Plaintiff's Wage Statement Penalty Claim*

41. Plaintiff's seventh cause of action alleges that Defendant "routinely failed and continue to fail to provide PLAINTIFF and CLASS MEMBERS with timely and accurate itemized wage statements in writing . . . [and] knowingly and intentionally failed to provide PLAINTIFF and CLASS MEMBERS with timely and accurate itemized wage statements in accordance with Labor Code § 226(a)." (Ex. A, ¶¶ 43-44.) Plaintiff further alleges that DSW "fail[ed] to provide accurate itemized statements for each pay period . . . ."). (Ex. A, ¶ 9.)

42. A plaintiff may recover a penalty of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code § 226(e). The statute of limitations for such claim is one year.

43. Based on the allegations in the Complaint, including Plaintiff's

---

[1] The statute of limitations for a Section 203 claim is three years.

allegation that DSW failed to provide itemized wage statements "each pay period," is reasonable to infer that Plaintiff is claiming that every wage statement violated section 226(a). This may also be reasonably inferred for an additional reason: <u>based on</u> Plaintiff's allegations, even if the class members had only one missed meal period, one missed rest break, or one minute of unpaid minimum or overtime wages due to the alleged off-the-clock work each pay period, Plaintiff alleges that these violations would make the wage statements deficient and, therefore, penalties under Labor Code § 226 would be recoverable.

44. During the one year period prior to the filing of Plaintiff's Complaint, DSW employed approximately 145 putative class members. These employees received approximately 3,300 wage statements. Assuming that all of them were deficient, the amount in controversy is **$322,750** in wage statement penalties (i.e. 145 pay periods x $50 for initial penalty + 3,155 pay periods x $100 subsequent penalties).

   viii. <u>*Plaintiff's Other Claims*</u>

45. Plaintiff also alleges other claims, including failure to reimburse necessary business expenses. However, it is unnecessary to consider these claims for purposes of CAFA jurisdiction because the five claims discussed above by themselves place **$6,236,527** in controversy.

   ix. <u>*Attorneys' Fees*</u>

46. In addition to the foregoing amounts, Plaintiff seeks attorneys' fees pursuant to the Labor Code. (*See, e.g.*, Ex. A, Prayer for Relief, ¶ 9.) Under CAFA, the potential attorneys' fee award should also be considered when calculating the amount in controversy. *Arias*, 936 F. 3d at 922 ("when a statute or contract provides for recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy"); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 U.S. Dist. LEXIS 84236, at *13 (N.D. Cal. June 14, 2013)(including attorneys' fees in determining the amount in controversy for CAFA

1  jurisdiction). The benchmark for attorneys' fees is 25%. *Sanchez v. Russell Sigler,*
2  *Inc.*, 2015 U.S. Dist. LEXIS 55667, No. CV 15-01350-AB, at *22-23 (C.D. Cal.
3  April 28, 2015).

4      47.   This results in attorneys' fees of **$1,559,131.75** ($6,236,527 x 25%).
5  When attorneys' fees are added to the above, the total amount in controversy is
6  **$7,795,658.75**.

7  **III. TIMELINESS OF REMOVAL**

8      48.   Pursuant to 28 U.S.C. § 1446(b), DSW timely filed this removal after
9  being served with the Summons and Complaint in the State Court Action on October
10 5, 2020. Since the 30th day after the service of the Complaint fell on November 4,
11 2020, the last day to remove the action was November 4, 2020. FED. R. CIV. PROC.
12 R. 6(a)(1)(C); *Gonzalez v. Ford Motor Co.*, No. CV 19-652 PA (ASx), 2019 U.S.
13 Dist. LEXIS 50844, at *11 (C.D. Cal. Mar. 22, 2019). DSW filed this Notice of
14 Removal on November 3, 2020.

15 **IV. VENUE**

16     Plaintiff originally filed this action in the Superior Court of California, for the
17 County of Contra Costa. Venue is proper in this district, pursuant to 28 U.S.C.
18 § 1441(a), because it encompasses the county in which this action is pending.

19 **V. PROCEDURAL REQUIREMENTS**

20     49.   Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and
21 orders served upon DSW are attached to this Notice of Removal. Pursuant to 28
22 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for
23 Plaintiff and a copy is being filed with the Clerk of the Superior Court of California,
24 for the County of Contra Costa. A true and correct copy of the state court notice is
25 attached to this Notice of Removal as "**Exhibit E**."

26 / / /
27 / / /
28 / / /

Rutan & Tucker, LLP
attorneys at law

2210/027347
15670375.2 a11/03/20

-12-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

50. The attached Exhibits A-E constitute all process, pleadings and orders served in the State Court Action.

Dated: November 3, 2020

RUTAN & TUCKER, LLP
BRIAN C. SINCLAIR

By: /s/ Brian C. Sinclair
    Brian C. Sinclair
    Attorneys for Defendant
    DSW SHOE WAREHOUSE, INC.